UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAURA FOWLER,                                    Case No. 12-12637

            Plaintiff,                         Terrence G. Berg
v.                                               United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                 Michael Hluchaniuk
                                                 United States Magistrate Judge

            Defendant.
_____/

## REPORT AND RECOMMENDATION
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 9, 11)

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On June 16, 2012, plaintiff Laura Fowler filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Thomas L. Ludington referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of supplemental security income benefits.  (Dkt. 2).[1]  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 9, 11).

_____

[1] On April 1, 2013, this case was reassigned from District Judge Ludington to District Judge Terrence G. Berg, pursuant to Administrative Order 13-AO-014.  (Dkt. 12)

## B.       Administrative Proceedings

Plaintiff protectively filed an application for a period of disability and

disability insurance benefits and an application for supplemental security income

benefits on April 17, 2006, alleging that she became disabled on October 3, 2005.

(Dkt. 7-2, Pg ID 128-30, 134-36).  The Title II claim was initially disapproved by

the Commissioner on April 30, 2006, because plaintiff had not worked long

enough to be eligible for DIB, and the Title XVI claim was disapproved on

September 26, 2006.  (Dkt. 7-4, Pg ID 76-78, 80-83).  Plaintiff requested a hearing

and on December 9, 2008, plaintiff appeared with an attorney before

Administrative Law Judge ("ALJ") Deborah Arnold, who considered the case de

novo.  (Dkt. 7-2, Pg ID 54-72).  In a decision dated June 3, 2009, the ALJ found

that plaintiff was not disabled and she could perform a reduced range of sedentary

work.  (Dkt. 7-2, Pg ID 42-48).  Plaintiff requested a review of this decision on

June 17, 2009.  (Dkt. 7-2, Pg ID 34-37).  The ALJ's decision became the final

decision of the Commissioner when the Appeals Council, on September 3, 2009,

denied plaintiff's request for review.  (Dkt. 7-2, Pg ID 30-32); *Wilson v. Comm'r*

*of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).  Plaintiff sought judicial review,

and the district court ordered remand of the matter on March 30, 2011.  (Dkt. 7-8,

Pg ID 391-401).  On April 18, 2011, the Appeals Council vacated the final

decision of the Commissioner and ordered a new hearing and administrative

2

proceedings.  (Dkt. 7-8, Pg ID 388-90).

On September 15, 2011, plaintiff appeared with counsel before ALJ Jessica Inouye, who considered the case de novo.  (Dkt. 7-16, Pg ID 803-52).  Plaintiff amended her disability onset date to April 1, 2007.  (Dkt. 7-12, Pg ID 594).  In a decision dated November 4, 2011, the ALJ found that plaintiff was not disabled and that she could perform a reduced range of light work.  (Dkt. 7-8, Pg ID 368-81).  Plaintiff requested a review of this decision, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council, on May 23, 2012, denied plaintiff's request for review.  (Dkt. 7-8, Pg ID 362-64); *Wilson*, 378 F.3d at 543-44.

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED** in part, that defendant's motion for summary judgment be **DENIED** in part, that the findings of the Commissioner be **REVERSED** in part, and that this matter be **REMANDED** under Sentence Four.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was born in 1969 and was 37 years of age on the alleged amended disability onset date and 41 years old at the time of the most recent administrative hearing.  (Dkt. 7-8, Pg ID 380).  Plaintiff's past relevant work included work as a

cashier-checker and bartender helper, unskilled positions performed at the light and medium levels of exertion, respectively.  (Dkt. 7-8, Pg ID 380; Dkt. 7-12, Pg ID 582).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged amended onset date.  (Dkt. 7-8, Pg ID 371).  At step two, the ALJ found that plaintiff's degenerative disc disease, fibromyalgia, obesity and depression were "severe" within the meaning of the second sequential step.  (*Id.*).  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Dkt. 7-8, Pg ID 371-73).

The ALJ concluded that plaintiff had the following residual functional capacity:

> to perform light work as defined in 20 CFR 416.967(b) except she could perform simple, unskilled work with an SVP of one or two.  She would require a sit-stand option, meaning the individual needs to sit or stand at will while performing the assigned duties.  The claimant could sit for up to thirty minutes at a time (with normal breaks) for a total of six hours in an eight-hour workday and stand for up to fifteen minutes at a time and walk for up to ten minutes at a time (with normal breaks) for a total of four hours in an eight-hour workday.  She could frequently push and/or pull bilaterally with the lower extremities. The claimant could occasionally balance, stoop, crouch, kneel, crawl, and climb ramps or stairs but not climb ladders, ropes, or scaffolds.  She should avoid concentrated exposure to extreme temperatures, wetness, humidity, pulmonary irritants, hazards, and vibrations.

4

(Dkt. 7-8, Pg ID 373-80).  At step four, the ALJ found that plaintiff could not perform her past relevant work.  (Dkt. 7-8, Pg ID 380).  At step five, the ALJ denied plaintiff benefits because she could perform a significant number of jobs available in the national economy.  (Dkt. 7-8, Pg ID 380-81).

**B.     Plaintiff's Claims of Error**

Plaintiff states in her "Issue" presented to the Court that the ALJ failed to properly evaluate plaintiff's medical records and plaintiff's testimony, and thus formed an inaccurate hypothetical that did not accurately portray plaintiff's impairments.  However, plaintiff's brief is sparse and difficult to follow.  Plaintiff notes that the ALJ determined that plaintiff cannot perform her past relevant work, and thus the burden of proof shifted to the Commissioner to prove that plaintiff was capable, considering her age, education, and past work experience, of engaging in other work, citing 20 C.F.R. § 404.1520(b)-(f).  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has a vocational qualification to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  Plaintiff avers, without any further elaboration, that the ALJ here failed to ask a proper hypothetical question because each element of the hypothetical question did not accurately describe plaintiff in all significant, relevant respects.  Plaintiff argues that the ALJ gave little weight to plaintiff's treating "psychologist," Beverly

5

Pourcho, MSW (because Ms. Pourcho only treated plaintiff for a short time), but improperly gave greater weight to the one-time consultative examiner, George Pestrue, Ph.D.  Plaintiff thus concludes that this matter should be remanded because the ALJ's reasoning for denial is inaccurate.

### C.    Commissioner's Motion for Summary Judgment

The Commissioner argues that the ALJ's finding that plaintiff is not disabled and could perform a significant number of other jobs is supported by substantial evidence.  According to the Commissioner, the ALJ found that plaintiff had a severe combination of impairments including degenerative disc disease, fibromyalgia, obesity, and depression.  (Dkt. 7-8, Pg ID 371).  The ALJ properly considered all of the medical opinion evidence in the record and assigned appropriate weight to the opinions.  The ALJ properly determined that Ms. Pourcho, a social worker, was not considered an acceptable medical source under the regulations (20 C.F.R. §§ 404.1513(a); 416.913(a)), and thus her opinion did not qualify as a medical source opinion and did not warrant the same weight as that of a treating physician's report.  (Dkt. 7-8, Pg ID 379).  The Commissioner contends that the ALJ nevertheless considered Ms. Pourcho's opinion but opted not to give it significant weight because of her brief treatment relationship with plaintiff of less than a month.  (Dkt. 7-8, Pg ID 379; Dkt. 7-13, Pg ID 628-37).

The Commissioner further argues that the ALJ's RFC determination

6

adequately accommodated all of plaintiff's credible limitations.  According to the Commissioner, in evaluating plaintiff's credibility, the ALJ carefully considered the objective medical evidence, opinion evidence and clinical findings, as well as plaintiff's symptoms and complaints of pain, the treatment received, and her activities of daily living.  (Dkt. 7-8, Pg ID 376-80).  The Commissioner contends that substantial evidence supports the ALJ's credibility determination.  The ALJ noted that records from plaintiff's primary care physician noted mild to moderate objective findings, at best (Dkt. 7-8, Pg ID 378), and that plaintiff has mostly normal physical examination findings, diagnostic findings, and neurological testing.  (Dkt. 7-8, Pg ID 376; Dkt. 7-7, Pg ID 295-96; Dkt. 7-13, Pg ID 735, 751, 773-74).  The ALJ also considered the absence of evidence supporting cervical radiculopathy and only mildly abnormal radiology studies.  (Dkt. 7-8, Pg ID 376; Dkt. 7-7, Pg ID 201, 291, 338-39; Dkt. 7-13, Pg ID 638).

The ALJ further noted that plaintiff's testimony was inconsistent and vague as to her capacity to perform daily activities.  For example, the ALJ noted plaintiff testified she never had a driver's license (Dkt. 7-8, Pg ID 376; Dkt. 7-16, Pg ID 812)), but she indicated on her Function Report that she drove (Dkt. 7-12, Pg ID 622), and Dr. Pestrue noted that plaintiff had a license but she lost it after getting a ticket and had not gotten it back because of not being able to pay the fine.  (Dkt. 7-13, Pg ID 780).  Further, plaintiff testified she could only lift five pounds, which

was contrary to the statement that she had lifted her 52-pound daughter.  (Dkt. 7-16, Pg ID 821).   The ALJ also noted that plaintiff's testimony regarding pain was not fully credible, given the medication regime and conservative medical treatment, which consisted of intermittent physical therapy and home exercises that improved her condition.  (Dkt. 7-8, Pg ID 376; Dkt. 7-7, Pg ID 214, 216, 338-39; Dkt. 7-13, Pg ID 735).  The ALJ noted that plaintiff only engaged in therapy for a month at a time, five years apart, and found this treatment evidence inconsistent with the assertion that plaintiff had constant pain and numbness and could not do exercises.  (Dkt. 7-8, Pg ID 377).  And, plaintiff's mental health treatment was limited and her depression was well-managed with medication.  (Dkt. 7-8, Pg ID 377; Dkt. 7-13, Pg ID 757-68, 784-94).

Finally, plaintiff's daily activities undermined her claims of disabling pain. The ALJ noted that plaintiff reported caring for her disabled husband and young daughter without any particular assistance, including bathing, dressing, and feeding her daughter.  (Dkt. 7-8, Pg ID 377; Dkt. 7-12, Pg ID 619-26).  Plaintiff's daily activities also consisted of maintaining her own personal hygiene and grooming, caring for her daughter, caring for a dog, cooking, and doing all household chores. (Dkt. 7-12, Pg ID 619-26).  The ALJ also noted that no physician ever opined that there is any medical reason why plaintiff's activities should be limited to the extent alleged.  (Dkt. 7-8, Pg ID 377).  Thus, the Commissioner argues that the ALJ's

credibility determination is supported by substantial evidence.

The Commissioner further argues that although plaintiff raised a general, unsupported contention that the hypothetical question did not account for all of her limitations, she fails to offer any specific discussion of this point–including the omitted limitations she believes should have been accommodated–and her argument should be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (citation and internal quotation omitted).

Finally, the Commissioner states that the court may reverse the Commissioner's decision and award benefits only if all essential factual issues have been resolved and "the proof of disability is overwhelming or proof of disability is strong and evidence to the contrary is lacking." *See Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994) (citing *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985)). The Commissioner contends that there is no overwhelming proof of disability here and plaintiff has not established a proper basis for reversal or remand. Thus, the Court should affirm the Commissioner's decision finding plaintiff disabled.

## III.   DISCUSSION

### A.   Standard of Review

9

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to

10

evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a

11

scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,

198 Fed. Appx. 521, 526 (6th Cir. 2006).

### B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et*

*seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

13

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20

C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

14

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

### C.      Analysis and Conclusion

### 1.      Lack of state agency medical expert opinion evidence at step three of the sequential analysis warrants a remand

A major flaw in the ALJ's analysis is the improper consideration of the opinion of a non-physician single decision-maker.[2]  (Dkt. 7-8, Pg ID 371).  The ALJ stated in her opinion:

> The undersigned noted the Disability Determination Service medical examiners disposed of this case after assessing the claimant's residual functional capacity, which meant no listing was met or equaled, in their opinion.

(*Id.*).  In this case, the single-decision maker (SDM) model was used pursuant to 20 C.F.R. § 404.906(b)(2).  This regulation provides streamlined procedures as an experiment, in which State Agency disability examiners may decide cases without documenting medical opinions from State Agency medical consultants.  The "single decisionmaker model" was an experimental modification of the disability determination process that happens to have been used in Michigan.  *See Leverette v. Comm'r of Soc. Sec.*, 2011 WL 4062380 (E.D. Mich. Aug. 17, 2011), *adopted by*

---

[2]  The Court raises this issue *sua sponte*, given the serious nature of the error and the pattern of repetition of this same error since the implementation of the single decision-maker model in Michigan. Notably, in Social Security cases, the failure to submit a particular legal argument is "not a prerequisite to the Court's reaching a decision on the merits" or a finding, *sua sponte*, that grounds exist for reversal. *Reed v. Comm'r of Soc. Sec.*, 2012 WL 6763912, at *5 (E.D. Mich. Nov. 27, 2012) (citing *Wright v. Comm'r of Soc. Sec.*, 2010 WL 5420990, at *1-3 (E.D. Mich. 2010), *adopted by* 2013 WL 53855 (E.D. Mich. Jan. 3, 2013)); *see also Buhl v. Comm'r of Soc. Sec.*, 2013 WL 878772, at *7 n. 5 (E.D. Mich. Feb. 13, 2013) (plaintiff's failure to raise argument did not prevent the Court from identifying error based on its own review of the record and ruling accordingly), *adopted by* 2013 WL 878918 (E.D. Mich. Mar. 8, 2013).

16

2011 WL 4062047 (E.D. Mich. Sept. 13, 2011). This experiment eliminated the reconsideration level of review and allowed claims to go straight from initial denial to ALJ hearing. *Id*. Most significantly, it allowed the state agency employee (the single decisionmaker) to render the initial denial of benefits without documenting medical opinions from the state agency medical consultants. *Id*. (citing 20 C.F.R. §§ 404.906(b)(2), 416.1406(b)(2)). The Programs Operations Manual System ("POMS") requires it to "be clear to the appeal-level adjudicator when the SSA-4734-BK [the PRFC assessment form] was completed by an SDM *because SDM-completed forms are not opinion evidence at the appeal levels*." POMS DI § 24510.05 (emphasis added).

In this case, plaintiff's physical impairments were evaluated by two different SDMs over the course of the administrative proceedings–Kevin Salk in September 2006 and Lynn Aurilio in August 2010. (Dkt. 7-3, Pg ID 74; Dkt. 7-9, Pg ID 298-305; Dkt. 7-9, Pg ID 493-503). Even though plaintiff underwent two different consultative physical examinations–first on September 9, 2006 by Dr. Richard C. Gause, M.D. (Dkt. 7-7, Pg ID 294-97), and second on July 10, 2010 by Dr. R. Scott Lazzara, M.D. (Dkt. 7-13, Pg ID 772-76), neither physician completed or reviewed and signed a "Disability Determination Transmittal" form or a "Physical Residual Functional Capacity Assessment" ("PFRCA") for plaintiff. Rather, only the SDMs completed and signed those forms. (Dkt. 7-3, Pg ID 74; Dkt. 7-9, Pg ID

298-305; Dkt. 7-9, Pg ID 493-503).  The ALJ here expressly relied on the opinions of the SDMs in reaching her finding that "no listing was met or equaled . . . ." (Dkt. 7-2, Pg ID 371).  More importantly, the ALJ improperly referred to the SDMs as medical sources, stating that "the Disability Determination Service *medical examiners* disposed of this case after assessing the claimant's residual functional capacity, which meant no listing was met or equaled, in their opinion." (*Id.*).  This was in error.  *See Hensley v. Comm'r of Soc. Sec.*, 2011 WL 4406359, at *1 (E.D. Mich. Sept. 22, 2011) (remand warranted because ALJ erroneously credited an RFC assessment as having been completed by a physician, as opposed to the non-physician single decisionmaker who wrote it).

Moreover, even if the ALJ did not improperly rely on the opinions of the SDMs as "medical examiners," the lack of any medical opinion on the issue of equivalence is in itself an error requiring remand.  As set forth in *Stratton v. Astrue*, — F. Supp.2d —; 2012 WL 1852084, *11-12 (D.N.H. May 11, 2012), SSR 96-6p describes the process by which ALJs are to make step-three determinations:

> The administrative law judge ... is responsible for deciding the ultimate legal question whether a listing is met or equaled. As trier of the facts, an administrative law judge ... is not bound by a finding by a State agency medical or psychological consultant or other program physician or psychologist as to whether an individual's impairment(s) is equivalent in severity to any impairment in the Listing of Impairments. However, *longstanding policy requires that the judgment of a physician* (or psychologist) designated by the Commissioner *on the*

> *issue of equivalence on the evidence* before the
> administrative law judge ... *must be received into the*
> *record as expert opinion evidence and given appropriate*
> *weight.*

SSR 96-6p, 1996 WL 374180, at *3 (emphasis added); *Barnett v. Barnhart*, 381

F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's impairment equals a listing is

a medical judgment, and an ALJ must consider an expert's opinion on the issue.")

(citing 20 C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at

*2 (6th Cir. Nov. 22, 1995) ("Generally, the opinion of a medical expert is required

before a determination of medical equivalence is made.") (citing 20 C.F.R. §

416.926(b)); *Modjewski v. Astrue*, 2011 WL 4841091, at *1 (E.D. Wis. Oct. 12,

2011) (warning that an ALJ who makes a step-three equivalence determination

without expert-opinion evidence runs the risk of impermissibly playing doctor).

The *Stratton* court further explains that SSR 96-6p treats equivalence

determinations differently from determinations as to whether an impairment meets

a listing, requiring expert evidence for the former, but not the latter.  *Stratton*, 2012

WL 1852084, at *12 (citing *Galloway v. Astrue*, 2008 WL 8053508, at *5 (S.D.

Tex. May 23, 2008) ("The basic principle behind SSR 96-6p is that while an ALJ

is capable of reviewing records to determine whether a claimant's ailments meet

the Listings, expert assistance is crucial to an ALJ's determination of whether a

claimant's ailments are equivalent to the Listings.") (citation and quotation marks

omitted)).  This expert opinion requirement can be satisfied by a signature on the

Disability Determination Transmittal Form.  *Stratton*, 2012 WL 1852084, at *12 (citing SSR 96-6p, 1996 WL 374180, at *3 (The expert-opinion evidence required by SSR 96-6p can take many forms, including "[t]he signature of a State agency medical ... consultant on an SSA-831-U5 (Disability Determination and Transmittal Form).")); *Field v. Barnhart*, 2006 WL 549305, at *3 (D. Me. Mar. 6, 2006) ("The Record contains a Disability Determination and Transmittal Form signed by Iver C. Nielson, M.D .... discharging the commissioner's basic duty to obtain medical-expert advice concerning the Listings question."), *adopted by* 2006 WL 839494 (D. Me. Mar. 30, 2006).  There is no Disability Determination and Transmittal Form signed by a medical advisor as to plaintiff's physical impairments in this record.  (Dkt. 7-3, Pg ID 74; Dkt. 7-9, Pg ID 493, 503).

The great weight of authority[3] holds that a record lacking any medical advisor opinion on equivalency requires a remand.  *Stratton*, 2012 WL 1852084, at *13 (collecting cases); *see e.g. Caine v. Astrue*, 2010 WL 2102826, at *8 (W.D. Wash. Apr. 14, 2010) (directing ALJ to obtain expert-opinion evidence on equivalence where none was in the record), *adopted by* 2010 WL 2103637 (W.D. Wash. May 25, 2010); *Wadsworth v. Astrue*, 2008 WL 2857326, at *7 (S.D. Ind. July 21, 2008) (holding that where record included no expert-opinion evidence on

---

[3] In *Stratton*, the court noted that a decision from Maine "stands alone" in its determination that 20 C.F.R. § 404.906(b) "altered the longstanding policy that an ALJ is required to seek a medical opinion on the issue of equivalence." *Id.* (citing *Goupil v. Barnhart*, 2003 WL 22466164, at *2 n.3 (D. Me. Oct. 31, 2003).

equivalence, "[t]he ALJ erred in not seeking the opinion of a medical advisor as to whether Mr. Wadsworth's impairments equaled a listing"). While courts in this district have concluded that the ALJ need not obtain expert opinion evidence in cases involving an SDM, *Gallagher v. Comm'r of Soc. Sec.*, 2011 WL 3841632 (E.D. Mich. Mar. 29, 2011) and *Timm v. Comm'r of Soc. Sec.*, 2011 WL 846059 (E.D. Mich. Feb. 14, 2011), the undersigned does not find these cases persuasive. In both cases, the court concluded that because the regulations permitted an SDM to make disability determination without a medical consultant, that the ALJ is, therefore, also permitted to do so where the "single decisionmaker" model is in use. However, nothing about the SDM model changes the ALJ's obligations in the equivalency analysis. *See Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20 C.F.R. § 1526(b)); *Retka*, 1995 WL 697215, at *2 ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b)). Based on the foregoing, the undersigned cannot conclude that the ALJ's obligation to consult a medical expert in making an equivalency determination is any different in a case where the SDM model is used. While the SDM is not required to obtain a medical opinion in cases involving physical impairment, as noted in *Timm* and *Gallagher*, nothing appears to have modified the

21

ALJ's obligations and it makes little sense to conclude that the ALJ is relieved

from obtaining an expert medical opinion in SDM cases.  Thus, the undersigned's

analysis does not alter the SDM model, which leaves the SDM discretion as to

whether a medical expert is consulted as to physical impairments.  Rather, the

undersigned's analysis leaves intact the requirements imposed on an ALJ in

making an equivalency determination, which do not otherwise appear to be

modified by the SDM model.  *See Byberg v. Comm'r of Soc. Sec.*, 2013 WL

1278500, at *2 (E.D. Mich. Mar. 27, 2013) ("Defendant's attempt to expand the

purposes of the SDM model beyond the initial determination of disability and into

the proceedings before the ALJ is misplaced."); *Harris v. Comm'r of Soc. Sec.*,

2013 WL 1192301, at *8 (E.D. Mich. Mar. 22, 2013) (a medical opinion on the

issue of equivalence is required, regardless of whether the SDM model is

implicated); *Hayes v. Comm'r of Soc. Sec.*, 2013 WL 766180, at *8-9 (E.D. Mich.

Feb. 4, 2013), *adopted by* 2013 WL 773017 (E.D. Mich. Feb. 28, 2013); *Maynard

v. Comm'r of Soc. Sec.*, 2012 WL 5471150 (E.D. Mich. Nov. 9, 2012) ("[O]nce a

hearing is requested, SSR 96-6p is applicable, and requires a medical opinion on

the issue of equivalence.").

  While the undersigned is not necessarily convinced that plaintiff can show

that her physical impairments satisfy the equivalency requirements, "[n]either the

ALJ nor this court possesses the requisite medical expertise to determine if

22

[plaintiff]'s impairments ... in combination equal one of the Commissioner's listings." *Freeman v. Astrue*, 2012 WL 384838, at *4 (E.D. Wash. Feb. 6, 2012). The undersigned finds that the lack of an expert medical opinion on the issue of equivalency is problematic and violated the requirements of SSR 96-6p.  For these reasons, the undersigned concludes that this matter must be remanded so that the ALJ can obtain the opinion of a qualified medical advisor on the issue of equivalence as to plaintiff's physical impairments.

### 2.    Plaintiff's remaining arguments

Because this case is being remanded for the reasons set forth above, there is no need to fully discuss plaintiff's remaining arguments.  Even so, because the issues plaintiff raises are likely to arise on remand, the undersigned addresses them briefly.

### a. The ALJ properly considered and weighed Ms. Pourcho's opinion as an "other source"

Plaintiff argues that the ALJ erred in assigning little weight to the opinion of social worker Beverly Pourcho while giving greater weight to the one-time consultative examiner, George Pestrue, Ph.D. The Commissioner responds that the ALJ considered all of the medical opinions in the record and assigned appropriate weight to them. In that analysis, the ALJ determined that Ms. Pourcho, a social worker, was not considered an "acceptable medical source" as defined by the Social Security Regulations. (Dkt. 7-8, Pg ID 379). The ALJ's finding as to Ms. Pourcho's opinion is supported by substantial evidence.

Under the regulations, a "treating source" entitled to "controlling weight" includes physicians, psychologists, or other "acceptable medical source[s]," and a social worker is not considered a "treating source" or other "acceptable medical source." *See* 20 C.F.R. §§ 404.1513(d), 416.913(d); *see also Payne v. Comm'r of Soc. Sec.*, 402 Fed. Appx. 109, 118-19 (6th Cir. 2010) (and the ALJ did not err in failing to include any limitations noted by the social worker because, "[a]lthough they may constitute other evidence of the claimant's ability to work, social workers are not acceptable medical sources under Social Security regulations"); *Holcomb v. Astrue*, 389 Fed. Appx 757, 759 & n.2 (10th Cir. 2010) ("Licensed clinical social workers are considered 'other sources,' as defined in 20 C.F.R. § 404.1513(d) and 416.913(d)" and "they cannot, by themselves, establish a medically determinable

24

impairment, constitute a medical opinion, or be considered the opinions of a treating source."). "Because [Ms. Pourcho] is not an acceptable medical source, the ALJ was not required to provide good reasons for the weight given to her opinions under §§ 404.1527(d)(2), 416.927(d)(2)." *Mulkey v. Comm'r of Soc. Sec.*, 2011 WL 4528485, at *7 (W.D. Mich. June 14, 2011) (noting there is no requirement that the ALJ articulate good reasons for his or her decision assigning specific weight to the opinion of such a source), *adopted by* 2011 WL 4528479 (W.D. Mich. Sept. 29, 2011).

Rather, Ms. Pourcho is considered to be an "other source" that the agency "may also use [as] evidence . . . to show the severity of [the claimant's] impairment(s) and how it affects his ability to work." *See* 20 C.F.R. §§ 404.1513(d), 416.913(d); *see also Link v. Comm'r of Soc. Sec.*, 2013 WL 3387813, at *13 (E.D. Mich. July 8, 2013). SSR 06-03p provides that "[o]pinions from . . . medical sources [] who are not technically deemed 'acceptable medical sources' under [the agency's] rules[ ] are important and should be evaluated on key issues such as impairment severity and functional effects." SSR 06-03p. However, there is no requirement that the ALJ must expressly discuss every piece of record evidence. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party."). Rather, "SSR 06-

25

03p requires an ALJ to consider the opinions expressed by these 'other' medical sources." *Phillips v. Comm'r of Soc. Sec.*, 2008 WL 4394274, at *4 (W.D. Mich. July 2, 2008); *see also Daniels v. Comm'r of Soc. Sec.*, 152 Fed. Appx. 485, 489 (6th Cir. 2005) ("[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.").

The ALJ here expressly considered Ms. Pourcho's opinions, stating:

> Beverly Pourcho, MSW, had the opinion, in March 2009, that the claimant met the requirements for Major Depression ruling out anxiety and posttraumatic stress disorder and noting that she had many health stressors that affected her mentally. Ms. Pourcho estimated claimant's global assessment of functioning to be 45 (17F/9), which is indicative of serious symptoms or any serious impairment in functioning (DSM-IV-TR). Although Ms. Pourcho is a mental health professional, she is not an "acceptable medical source" as defined within the meaning of the Regulations. The Regulations do not permit an assignment of weight, and even if Ms. Pourcho were an acceptable medical source, little weight would be given to her opinion because the treatment history is quite brief, no more than a month.

(Dkt. 7-8, Pg ID 379).

The ALJ thus properly considered and weighed Ms. Pourcho's opinions, as an "other source," with the medical evidence in the record, and her finding affording the opinion "little weight" is supported by substantial evidence. Accordingly, plaintiff's claim of error should be denied.

26

> **b.**   **The ALJ's RFC determination and accompanying hypothetical question are supported by substantial evidence**

Plaintiff's brief is sparse and difficult to follow, but she seems to argue that the hypothetical question posed to the vocational experts did not describe plaintiff in all significant, relevant respects.  Plaintiff, however, failed to discuss how the hypothetical question was deficient or what limitations she believes were omitted that should have been accommodated.  Plaintiff also (incorrectly) claims that the ALJ here included only one paragraph in the decision about plaintiff's credibility, but fails to provide any discussion or analysis as to if or how the ALJ erred in her assessment of plaintiff's credibility.  While the undersigned has thoroughly reviewed the record evidence, the parties' submissions, and the ALJ's decision, plaintiff cannot simply make the bald claims that the ALJ erred, while leaving it to the Court to scour the record to support this claim.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to ... put flesh on its bones.") (citation omitted); *Crocker v. Comm'r of Soc. Sec.*, 2010 WL 882831, at *6 (W.D. Mich. Mar. 9, 2010) ("This court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments.") (citation omitted).  In the view of the

27

undersigned, plaintiff's argument is wholly insufficient and undeveloped.  Plaintiff offers no basis whatsoever for the Court to conclude that the ALJ's decision is not supported by substantial evidence and offers no factual or legal basis for the Court to conclude that the ALJ committed reversible error.

Moreover, as described in detail above, the Commissioner convincingly establishes that plaintiff's credible limitations were accommodated in both the RFC and the hypothetical question posed to the vocational expert.  The ALJ conducted a thorough analysis of the record evidence, both before and after the amended onset date, gave appropriate weight to the opinions of the treating and examining physicians, and fully explained her analysis of plaintiff's credibility, in arriving at her RFC determination.  The hypothetical questions posed to the vocational expert mirrored the ALJ's RFC determination, and thus the testimony of the vocational expert constitutes substantial evidence supporting the ALJ's finding that plaintiff is not disabled. Plaintiff offers no basis whatsoever for the Court to conclude that the ALJ's decision is not supported by substantial evidence and offers no factual or legal basis for the Court to conclude that the hypothetical questions posed to the vocational expert do not accurately portray plaintiff's physical and mental impairments.  Accordingly, the undersigned finds no basis to disturb the ALJ's RFC determination.  If, on remand, the qualified medical advisor finds that plaintiff's physical impairments equal a listing, then the ALJ will need to re-

evaluate plaintiff's credibility and her residual functional capacity based on that finding. However, if the qualified medical advisor finds that plaintiff's physical impairments do not equal a listing, then the undersigned finds that the ALJ's RFC is supported by substantial evidence.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED** in part, that defendant's motion for summary judgment be **DENIED** in part, that the findings of the Commissioner be **REVERSED** in part, and that this matter be **REMANDED** under to Sentence Four.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: July 30, 2013                        s/Michael Hluchaniuk
                                           Michael Hluchaniuk
                                           United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on July 30, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Richard J. Doud, Derri T. Thomas, AUSA, and Jessie Wang-Grimm, Social Security Administration.

                                           s/Tammy Hallwood
                                           Case Manager
                                           (810) 341-7887
                                           tammy_hallwood@mied.uscourts.gov

30